In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

RECEIVED
JAN 0 9 2006
LARRY W. PROPES, CLERK
CHARLESTON, SC

| | |
|---|---|
| Antonio Barber, # 10838-017, ) | Civil Action No. 9:05-1270-CMC-GCK |
| Plaintiff, ) | |
| vs. ) | **REPORT AND RECOMMENDATIONS** |
| United States, ) | **OF THE MAGISTRATE JUDGE** |
| Defendant. ) | |

## I. INTRODUCTION

The Plaintiff, Antonio Barber ("Plaintiff"), Register Number 10839-017, is a federal prisoner who currently is incarcerated in the Federal Correctional Institution ("FCI") in Bennettsville, South Carolina. Proceeding *pro se* and *in forma pauperis*, Plaintiff initially commenced this action pursuant to the Federal Tort Claims Act (the "FTCA") against Harley G. Lappin, BOP Director; and Other (BOP) Agencies, Officials or Employees" (collectively, the "Individual Defendants").[1] Plaintiff alleges personal injury caused by the negligent or wrongful acts or omissions of the Individual Defendants; specifically, Plaintiff contends that the Individual Defendants improperly calculated his custody classification from 1998 to 2004 by adding points

---

[1] *See* Complaint [1-1] at p. 1.

for his 1987 Battery conviction,[2] a conviction that Plaintiff contends is "'unrelated'" to Plaintiff's current drug offense case[.]"[3]  Plaintiff seeks $25 Million in damages.

## II. JURISDICTION AND VENUE

### A. Jurisdiction

Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2), D.S.C., the undersigned United States Magistrate Judge is authorized to review this case and submit findings and recommendations to the district court.

Plaintiff brought the present action pursuant to 28 U.S.C. § 1346(b)(1),[4] which provides in pertinent part as follows:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office of employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

### B. Venue



Plaintiff initially filed this case in the United States District Court for the District of Columbia, presumably because Harley G. Lappin, Director of the BOP, "[has] his principal place of employment in the Federal Bureau of Prisons in Washington, DC, and at all times relevant herein transacted business and maintained his office in Washington, DC[.]"[5]

---

[2]  According to Plaintiff's Presentence Investigation Report, in April 1987, when Plaintiff was 22 years old, he was charged with Aggravated Battery with a Deadly Weapon. Plaintiff subsequently pled guilty to the lesser charge of Battery. In September 1987, Plaintiff entered a plea of *Nolo Contendere;* an adjudication of guilty was withheld, and Plaintiff was ordered to pay court costs and restitution. *See* Plaintiff's Presentence Investigation report, attached as Exhibit # 1 to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment and Memorandum in Support of Motion [28-1] (hereinafter "Defendants' Memorandum") Memorandum. [28-1]

[3]  *See* Complaint [1-1] at p. 5.

[4]  *See* Complaint [1-1] at p. 1.

[5]  *See* Complaint [1-1] at p. 2.

Page 2 of 20

By Order dated March 14, 2005 [10-1], the District Court for the District of Columbia transferred this case to the District of South Carolina pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The Individual Defendants contend that venue is not proper in the District of South Carolina, because a civil action against the United States, brought under 28 U.S.C. § 1346(b), "may be prosecuted only in the judicial district where the Plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402. The Individual Defendants argue that venue does not properly lie in the District of South Carolina, as the matters about which Plaintiff complains occurred in the Northern District of Florida, the Southern District of Louisiana, the District of Kentucky, or the Middle District of Georgia.[6] Furthermore, the Individual Defendants argue that a prisoner's place of incarceration is not his residence for venue purposes. *See, e.g.,* Ellingburg v. Connett, 457 F.2d 240, 241 (5th Cir. 1971); Flanagan v. Shively, 783 F.Supp. 922, 935-36 (M.D. Pa.) (inmate not resident of district in which he is incarcerated absent evidence of intent to remain there upon discharge), *aff'd,* 980 F.2d 722 (3d Cir. 1992), *cert. denied,* 510 U.S. 829 (1993); O'Brien v. Schweiker, 563 F.Supp.3d, 301, 302 (E.D.Pa. 1983) (prisoner retains domicile he had at time of incarceration); James Wm. Moore, Moore's Fed. Practice § 110.03[1] (3d ed. 2000). The burden is on the objecting party to demonstrate that venue is improper. *See* Myers v. American Dental Ass'n., 695 F.2d 716, 724-25 (3d Cir. 1982), *cert. denied,* 462 U.S. 1106 (1983). The Individual Defendants allege that Plaintiff is a resident of Florida, and is only being held by a "custodian" at FCI Bennettsville,[7] but they do not offer <u>any</u> evidence to support their claim that Plaintiff is a resident of Florida.



---

[6]   *See* Defendants' Memorandum [28-1] at pp. 6-7.

[7]   *See* Defendants' Memorandum at p. 7.

Page 3 of 20

Significantly, in his pleading, Plaintiff did not name Florida (or any other state, for that matter) as his state of residency, but instead stated, specifically with respect to venue, that "Plaintiff is a citizen of the United States and is currently incarcerated, within the Federal [BOP], at Federal Prison Camp Eglin, Florida[.]"[8] The court is of the opinion that because the Individual Defendants have not offered any evidence that Plaintiff is a resident of Florida, and Plaintiff has not claimed <u>any</u> state as his state of residency, the Individual Defendants have failed to persuasively demonstrate that venue is improper. Thus, finding that venue is proper in the District of South Carolina, the court will turn its attention to the merits of the case.

### III.  THE *PRO SE* COMPLAINT



As a *pro se* litigant, Plaintiff's pleadings are accorded liberal construction. <u>Hughes v. Rowe</u>, 449 U.S. 5 (1980) (*per curiam*); <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>Loe v. Armistead</u>, 582 F.2d 1291 (4th Cir. 1978); <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, <u>Leeke v. Gordon</u>, 439 U.S. 970 (1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. <u>Hughes</u>, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. <u>Barnett v. Hargett</u>, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (<u>Small v. Endicott</u>, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

---

[8]    *See* Complaint [1-1] at p. 2.

## IV. *IN FORMA PAUPERIS* STATUS

Plaintiff brought this action *in forma pauperis* under 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs before proceeding with the lawsuit. [2-1] To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case at any time upon a finding that the action "is frivolous or malicious" or "fails to state a claim on which relief may be granted[.]"[9] A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992). Hence, under Section 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. Neitzke v. Williams, 490 U.S. 319 (1989); Allison v. Kyle, 66 F.3d 71 (5th Cir. 1995). Thus, the court may dismiss a claim as "factually frivolous" under Section 1915(e) if the facts alleged are clearly baseless. Denton v. Hernandez, *supra.* In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor. Id.

## V. FACTUAL BACKGROUND

Plaintiff was sentenced in the United States District Court for the Northern District of Florida to a 135 month sentence and five years supervised release for the offense of Conspiracy to Possess with Intent to Distribute Cocaine and Cocaine Base in violation of 21 U.S.C. § 846. His projected release date is October 3, 2007.[10]

At some time during October 1998, while Plaintiff was incarcerated at the Federal Detention Center in Tallahassee, Florida, awaiting assignment to a federal prison, Plaintiff was categorized as having a "Serious History of Violence" based upon his 1987 conviction for

---

9 *See* 28 §§ 1915(e)(2)(B)(i), (ii).

10 *See* Defendants' Memorandum [28-1] at pp. 1-2.

Battery.[11] Consequently, Plaintiff was assigned five points under the "History of Violence" category; those points were used to calculate his custody classification score.[12] Plaintiff was scored as a Medium security inmate with In custody and was assigned to FCI Oakdale, a medium security Institution in Louisiana.[13] After Plaintiff arrived at FCI Oakdale, Plaintiff's Unit Team re-calculated his custody classification and assigned him four points under the "History of Violence" category.[14] Plaintiff was scored as a Minimum security inmate with In custody.[15] Next, Plaintiff was transferred to the Federal Medical Center in Lexington, Kentucky, where he again was assigned four points under the "History of Violence" category and remained classified as a Minimum security inmate with In custody.[16] Later, Plaintiff was transferred to the Federal Prison Camp in Atlanta, Georgia, where he again was assigned four points under the "History of Violence" category and remained classified as a Minimum security inmate with In custody.[17]

Next, Plaintiff was transferred to Federal Prison Camp Eglin, at Eglin Air Force Base in Florida, and assigned four points under the "History of Violence" category, and remained classified as a Minimum security inmate with In custody.[18] While incarcerated at Federal Prison



---

[11]   Although the Defendants state that Plaintiff initially was incarcerated in a Federal Detention Center in **1988**, (see Defendants' Memorandum [28-1] at p. 3) it appears that this statement is a typographical error. Plaintiff states that he was first incarcerated at the Federal Detention Center in August **1998** (see Plaintiff's Standard Form 95 at p. 2, (1)), and his initial BOP "Security/Designation" form is dated August 19, **1998**. (See Exhibit A to Plaintiff's Complaint. [1-1])

[12]   See Exhibit A to Plaintiff's Complaint. [1-1]

[13]   See Exhibit B to Plaintiff's Complaint. [1-1]

[14]   See Exhibit C to Plaintiff's Complaint. [1-1]

[15]   Id.

[16]   See Exhibit D to Plaintiff's Complaint. [1-1]

[17]   See Exhibit E to Plaintiff's Complaint. [1-1]

[18]   See Exhibit F to Plaintiff's Complaint. [1-1]

Camp Eglin, Plaintiff's custody status was changed from In custody to Out custody.[19] In January 2004, Unit Team Staff at Federal Prison Camp Eglin removed the points assigned under the "History of Violence" category from Plaintiff's custody classification form, and Plaintiff remained a Minimum security inmate with Out Custody.[20] Finally, Plaintiff was transferred to FCI Bennettsville, where he remains classified as a Minimum security inmate with Out custody and with no points assigned to the category of "History of Violence."

## VI. PROCEDURAL HISTORY

Plaintiff initially filed this tort complaint on October 4, 2004 in the United States District Court for the District of Columbia (Case No. 1: 04-CV-01691).[21] Plaintiff filed a Standard Form 95 (Claim for Damage, Injury, or Death) which requested damages in the total amount of $25 Million for personal injury sustained as a result of the BOP's alleged intentional failure to comply with the five year statute of limitations set forth in 18 U.S.C. § 3282, and the BOP's misapplication of Security Designation and Custody Classification Points pursuant to Program Statement 5100.06 and/or 5100.07 to him.[22] The gravamen of Plaintiff's complaint is that BOP staff incorrectly calculated his custody classification from 1998 to 2004, and that his 1987 conviction was outside the "statute of limitations" set forth in 18 U.S.C. § 3282.[23]



---

[19]  See Exhibit J to Plaintiff's Complaint. [1-1]

[20]  Id.

[21]  Plaintiff was incarcerated in the Federal Prison Camp at Eglin Air Force Base, Florida, at the time he filed the Complaint [1-1] and his motion to proceed *in forma pauperis*. [2-1]

[22]  In the event that a limitations issue were to arise, the Plaintiff would have the benefit of the holding in Houston v. Lack, 487 U.S. 266 (1988) with respect to the "delivery date" of his complaint. However, the "delivery date" of Plaintiff's pleadings initially could not be determined from a review of the file because the file did not include the original envelope in which Plaintiff mailed his complaint. In view of the liberal construction afforded *pro se* complaints, in this case, the date that Plaintiff delivered it to the mailbox at the Federal Prison Camp Eglin Air Force Base (September 2, 2004) would be deemed the provisional "delivery date". See Plaintiff's Complaint [1-1] at p. 8 (certificate of mailing).

[23]  Plaintiff's complaint and various other of his pleadings refer to 18 U.S.C. § 3282. That section sets forth a five year federal statute of limitations, but only applies to the prosecution of federal crimes and does not apply to consideration by prison officials of an

On October 4, 2004, an Order was issued by the District Court for the District of Columbia which provisionally authorized the Clerk of Court to file the action and requested certain financial information in accordance with 28 U.S.C. § 1915. [3-1] In late October 2004, Plaintiff was transferred to FCI Bennettsville [7-1] and by Order filed in the United States District Court for the District of Columbia on March 15, 2005, this case was transferred to the District of South Carolina pursuant to 28 U.S.C. § 1404(a). [9-1; 10-1]

Thereafter, on June 10, 2005, the undersigned United States Magistrate Judge directed the Plaintiff to complete a Summons and a Process Receipt and Return ("Form USM 285") for each of the Individual Defendants. [13-1] The Plaintiff complied with this order, providing documents for Harley G. Lappin and for Phyllis J. Pyles, Director, Civil Division, Torts Branch, DOJ. The Plaintiff did not provide forms for the defendants he initially had captioned as "Other (BOP) Agencies, Officials or Employees" so the undersigned directed that the clerk of court edit the docket to reflect the change. [14-1]



In July 2005, service was accomplished on the Individual Defendants Phyllis Pyles and Harley G. Lappin. On September 13, 2005, the Individual Defendants filed an Answer, asserting that the action was filed pursuant to 28 U.S.C. § 1346(b)(1), and alleging that the FTCA prohibited punitive damages. The Individual Defendants also admitted that the Plaintiff had exhausted his administrative remedies by filing a Standard Form 95 Tort Claim for money damages, but denied that the BOP's acceptance of that Form acted to waive any statute of limitations defense based on Plaintiff's assertion that his claim arose in 1998 due to his custody classification in 1998.

On September 28, 2005, Plaintiff filed a Motion to Exclude Defendants' Answer on various grounds, as well as a "Nunc Pro Tunc Request Pursuant to 28 U.S.C. § 2679(d)(5) in Opposition to Defendant's [sic] Answer." [19-1; 21-1] Both Motions were denied by the

---

inmate's prior criminal history in determining custody classifications. Thus, Section 3282 has absolutely no relevance to the issues in this case.

undersigned United States Magistrate Judge. [20-1; 22-1] Plaintiff filed a Motion for Leave to File his Nunc Pro Tunc Amended Complaint, and Individual Defendants timely filed their objection thereto. [23-1; 24-1] The Plaintiff's Motion was denied by the undersigned on October 5, 2005. [25-1] Next, on October 25, 2005, Plaintiff filed a Motion for an Order to Strike the Defendants' Objections to Plaintiff's Amended Complaint [26-1], which likewise was denied by this court on October 27, 2005. [27-1]

On October 28, 2005 the Individual Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment and Memorandum in Support of Motion. [28-1] On October 31, 2005, the undersigned issued an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff that the Individual Defendants had filed their Motion, that Plaintiff was required to respond, and, if he failed to respond, this court might grant the relief requested. [29-1]

Thereafter, on November 1, 2005, the Individual Defendants filed a Motion to Stay Discovery or For a Protective Order, seeking protection under Rule 26(c)(1), Fed.R.Civ.P., in order to avoid responding to Plaintiff's Request for Admissions in this case. [30-1] The undersigned denied the Individual Defendants' Motion by a separate Order filed on November 2, 2005 [31-1] on two principle grounds: First, the Individual Defendants had failed to carry their burden of demonstrating the need for a stay or protective order because they had failed to set forth any facts to support their request, but instead relied upon such conclusory statements as "[d]iscovery is not needed to respond to the [D]efendants' assertion of the discretionary function exception as a defense" to the Plaintiff's FTCA case, and "discovery should not be had until the court has an opportunity to rule on the question of the applicability of the discretionary function exception."[24] Second, the Individual Defendants had failed to provide the court with a copy of

---

[24] See Defendants' Memorandum [30-1] at p. 2.

Plaintiff's discovery requests, which left the court bereft of the knowledge needed to determine whether an order should issue under Rule 26(c).

The Individual Defendants next filed a Notice of Substitution, announcing that the United States was being substituted for the Individual Defendants, for any acts and omissions alleged to have been committed by them as to all allegations related to the individual's official capacities. [40-1] In support of the Notice of Substitution, the United States Attorney certified, pursuant to 28 U.S.C. § 2679(d)(1), that the Individual Defendants were acting within the scope of his employment at all relevant times, and requested that the United States be substituted as the defendant in the case.[25] Accordingly, the undersigned has issued an Order [52-1] which substitutes the United States, as the sole defendant in this action (the "Defendant"), for the Individual Defendants, and hereinafter in the text of this Report and Recommendation, the term "Defendant" will refer to the United States.

During the month of November, Plaintiff filed a Motion for Summary Judgment [32-1], a response to Defendant's Motion for Summary Judgment [35-1], a Motion to Compel Discovery from the Defendant [41-1], another Motion for Summary Judgment [43-1], and a Motion for an Order of Judgment. [45-1] On December 7, Plaintiff filed a Motion for a Hearing. [47-1] The Defendant timely filed responses to all motions filed by the Plaintiff. Thus, the Defendant's Motion to Dismiss or for Summary Judgment, and the five (5) motions filed by Plaintiff are ripe for review by the court.



---

[25] Pursuant to the Federal Tort Claims Act:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. See 28 U.S.C. § 2679(d)(1).

The various United States Attorneys have been delegated the authority to make such certifications. 28 C.F.R. § 15.3(a). Such certification has been made to the court. See [40-1]

## VII. THE STANDARDS FOR DECIDING A MOTION TO DISMISS, OR FOR SUMMARY JUDGMENT

When resolving a motion to dismiss, a court "presumes all factual allegations in the complaint to be true and accords all reasonable inferences to the non-moving party." Sumner v. Tucker, 9 F.Supp.2d 641, 642 (E.D.Va.1998), *citing* 2A Moore's Federal Practice ¶ 12.07[2.5] (2d ed.1994); *see also* Loe v. Armistead, 582 F.2d 1291, 1295 (4th Cir.1978). As the Plaintiff in this case is *pro se*, and his pleadings are entitled to liberal construction, the complaint will survive a Rule 12(b)(6) motion unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*) (internal quotation omitted); *see also* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (holding that a Rule 12(b)(6) motion should be denied unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").[26]

With respect to determining a motion for summary judgment, as the Supreme Court held in Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986):



---

[26] The fact that the court will refer to certain exhibits attached to the pleadings does not necessary mean that the motion to dismiss is converted to one for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004). In Pueschel, the panel stated: "We note that Rule 12(b)(6) does not mandate that a district court treat a motion to dismiss as a motion for summary judgment simply because the moving party includes exhibits with its motion. Rule 12(b)(6) only requires that a motion to dismiss be treated as a motion for summary judgment when the motion to dismiss or exhibits present matters outside the nonmoving party's pleadings and the district court does not exclude such matters. Fed.R.Civ.P. 12(b)(6) (stating that [i]f, on a motion ... to dismiss ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...."); Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 n. 7 (4th Cir.1988) (noting that district court's reliance on exhibits to motion to dismiss did not convert the motion into one for summary judgment because "the facts to which the court so referred were either alleged in the amended complaint or contained in the exhibits thereto"); Wilson-Cook Medical, Inc. v. Wilson, 942 F.2d 247, 252 (4th Cir.1991) (holding that inclusion of supporting memoranda and affidavits did not convert motion to dismiss into motion for summary judgment because the district court did not consider such material).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion. Felty v. Graves-Humphreys Co., 818 F. 2d 1126 (4th Cir. 1987). Similarly, genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in affidavits or depositions. Stone v. University of Md. Medical Sys. Corp., 855 F. 2d 167 (4th Cir. 1988).

## VIII. ANALYSIS

### A. Introduction

As a *pro se* litigant, Plaintiff's Complaint must be construed liberally by this court. Nevertheless, a careful review of all of the pleadings in this case has led this court to recommend, for the reasons set forth below, that the Plaintiff's complaint be dismissed.

### B. The Doctrine of Res Judicata



Under the doctrine of res judicata, or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004), *citing* Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); Brown v. Felsen, 442 U.S. 127, 131 (1979); Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991); *see also* Martin v. American Bancorporation Ret. Plan, 407 F.3d 643, 650 (4th Cir. 2005) (*citing* Pueschel *with approval*). By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, "[r]es judicata ⋯ encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." Pueschel, 369 F.3d at 354, *citing* Brown, 442 U.S. at 131.

"For the doctrine of res judicata to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." Martin, 407 F.3d at 650, *citing* Pueschel, 369 F.3d at 354-55.

Applying those factors to the present case, it first must be noted that there have been two final judgments on the merits in two prior suits. In 2001, Plaintiff, acting *in forma pauperis*, filed a Bivens[27] action in the United States District Court for the District of Columbia against the "Federal Bureau of Prisons and Kathleen Hawk Sawyer, Director" of the BOP at that time, alleging violations of the due process and double jeopardy clauses based upon the same set of facts as in the present case. *See* Barber v. Bureau of Prisons, C.A. No. 01-0612 (D.D.C. March 21, 2001) ("Barber I").[28] In Barber I, Plaintiff claimed that the federal defendants improperly added points to his custody classification based on an incident "that do[es] not relate to Federal B.O.P. jurisdiction (i.e. incidents that occur within the B.O.P.")." Barber I.[29] In that complaint, Plaintiff challenged the BOP's reliance on Program Statement 5100.06, Security Designation and Custody Classification Manual, when determining his custody classification.



In Barber I, the district court denied Plaintiff relief, observing that generally, "prisoners do not have a protected constitutional right . . . to remain in a particular custody or security classification" and Plaintiff had not demonstrated any extraordinary circumstances that would state a viable due process claim. Next, the district court held that the Fifth Amendment's protection against double jeopardy was not implicated by the BOP's custody designations, which

---

27    *See* Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). A Bivens action with respect to federal officials is the judicially established equivalent of a statutory 42 U.S.C. § 1983 lawsuit against state officials to vindicate violations of constitutionally protected rights. Zimbleman v. Savage, 228 F.3d 367, 370 (4th Cir. 2000).

28    Barber I is attached to Defendants' Memorandum [28-1] as Exhibit # 2.

29    *See* Barber I at p. 1, *quoting from* Complaint at p. 3.

Page 13 of 20

simply established conditions for the execution of a previously imposed sentence, and did not themselves constitute prosecution or punishment. The district court granted Plaintiff's application to proceed *in forma pauperis*, dismissed Barber I with prejudice for failure to state a claim, and imposed a strike under 28 U.S.C. § 1915(g). Plaintiff's motion for reconsideration of the district court's decision was denied by an order filed on May 2, 2001.[30] The Court of Appeals, in a *per curiam* Order, affirmed the district court's orders for the reasons stated therein.[31]

In 2003, Plaintiff filed a second action in the United States District Court for the District of Columbia, which again challenged his security designation and custody classification. Plaintiff raised the same allegation with respect to a violation of the Fifth Amendment's double jeopardy clause and also alleged a violation of 18 U.S.C. § 3282. The district court found that as a result of Barber I, the case was procedurally barred by the doctrine of *res judicata*, and ordered that the action be dismissed. See Barber v. Bureau of Prisons, et al., C.A. No. 03-0806 (D.D.C. October 28, 2003) ("Barber II").[32] The district court noted that "[a] final judgment in one action bars any further claim based on the same nucleus of facts, for it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies."[33] In that action, the court noted that Plaintiff again raised a double jeopardy claim, but in conjunction with an alleged violation of a federal statute (18 U.S.C. §

---

[30]  The Order denying reconsideration of the decision in Barber I is attached to Defendants' Memorandum [28-1] as the fourth page of Exhibit # 2.

[31]  See Barber v. Bureau of Prisons, No. 01-5160, 2001 WL 1029162 (D.C. Cir. Aug. 28, 2001) (*per curiam*) attached to Defendants' Memorandum [28-1] as Exhibit # 3. On appeal, the panel consisted of Chief Judge Ginsburg, Judge Williams, and Judge Sentelle.

[32]  Barber II is attached to Defendants' Memorandum [28-1] as Exhibit # 4.

[33]  Barber II at p. 2 (internal quotations and citations omitted).

Page 14 of 20

3282) "that does not appear to have any application to the execution of his sentence."[34] The court held that "the nucleus of facts underlying the statutory claim is the same as that underlying the previously adjudicated constitutional claims [in Barber I]."[35]

On appeal, the district court's decision was summarily affirmed on the grounds that Barber's claims were "barred by the doctrine of res judicata, also known as claim preclusion."[36] The Court of Appeals held that the judgment on the merits in Barber I "bars the current suit even though appellant relies on a different legal theory." Barber II, 2004 WL 758961, *citing* Page v. United States, 729 F.2d 818, 820 (D.D. Cir. 1984) ("[I]t is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies." (internal citations omitted)).

Applying the three res judicata factors to the case at bar, it is clear that the first and third requisites have been met: there have been two final judgment on the merits in an earlier suit, and the parties to this suit are the same as the parties in the previous suits. As to the second factor, *viz.*, whether Plaintiff has asserted a new cause of action by claiming a violation of the FTCA in the instant case, the Fourth Circuit has long held that it is the facts surrounding the occurrence which constitute the cause of action, not the legal theory or label affixed to it. As Judge Donald Russell, writing for a panel of the Fourth Circuit, observed:

> Unfortunately, the authorities do not provide any precise uniform definition of 'cause of action' in connection with the application of res judicata. A much broader definition of cause of action in connection with the doctrine of res judicata, has developed under modern authorities. Under this modern rule, the term, cause of action, has been given varied application, depending largely on the facts in each case. Thus, in some cases, it has depended for its application on whether the

---

[34]   Barber II at p. 2 (footnote omitted).

[35]   Barber II at p. 2.

[36]   See Barber v. Federal Bureau of Prisons, et al., No. 03-5342, 2004 WL 758961 (D.C. Cir. 2004) *(per curiam) (rehearing en banc denied, June 9, 2004)*, attached to Defendants' Memorandum [28-1] as Exhibit # 5. The appellate panel consisted of Chief Judge Ginsburg, Judge Edwards, and Judge Henderson.

facts in the two cases are the same; in other cases, on whether the same primary right is asserted.[37]

Put another way, "[t]he determination of whether two suits arise out of the same cause of action . . . does not turn on whether the claims asserted are identical. Rather, it turns on whether the suits and the claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.' " Pueschel, 369 F.3d at 355, *citing* In re Varat Enters., Inc., 81 F.3d 1310, 1316 (4th Cir. 1996) (internal citations omitted). As the Pueschel court explained: "Were we to focus on the claims asserted in each suit, we would allow parties to frustrate the goals of res judicata through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.' " Pueschel, 369 F.3d at 355, *citing* Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir. 1991).



In the present case, it appears that even without a "precise uniform definition" of a cause of action, it may be concluded that there exists an identity of the claims before this court and those before the courts of the District of Columbia, as all three arise of of "the ame core of operative facts." *See* Pueschel, 369 F.3d at 355. The three lawsuits deal with the same subject matter: the calculation of Plaintiff's custody classification by the BOP. All three suits allege that BOP staff wrongfully and negligently considered Plaintiff's 1987 Battery conviction when determining his custody classification. Thus, in each case, Plaintiff has alleged the same wrongful act, stemming from the same operative facts in support of his allegations, and has asked for the same amount of damages. In addition, the present suit and Barber II both allege that the statute of limitations set forth in 18 U.S.C. § 3782 was violated. The fact that Plaintiff has set forth a new legal theory (violation of the FTCA) in the present action does not remove the bar of res judicata.

---

[37]    Nash County Bd. of Education v. Bilmore Co., 640 F.2d 484, 487-488 (4th Cir. 1981) (internal quotations, citations, and footnotes omitted).

Accordingly, Plaintiff's claims are barred by the doctrine of res judicata because his claims are based upon the same "nucleus of facts" as those claims previously adjudicated in Barber I and Barber II. Thus, it is recommended that Plaintiff's complaint should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

The Prison Litigation Reform Act (the "PLRA"), which amended 28 U.S.C. § 1915, states that federal courts shall dismiss actions filed *in forma pauperis* if, at any time, the court determines that the action is frivolous, malicious, of fails to state a claim upon which relief can be granted. See 28 U.S.C. § 1915(e)(2)(B). Congress has recognized that a litigant "whose filing fees are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits." Cain v. Commonwealth of Virginia, 982 F.Supp. 1132, 1136 (E.D.Va.1997), *quoting* Neitzke v. Williams, 490 U.S. 319, 324 (1989). The undersigned United States Magistrate Judge is of the opinion that Plaintiff's action is patently frivolous and malicious under the PLRA, 28 U.S.C. § 1915(e)(2)(B)., and should be summarily dismissed under 28 U.S.C.1915A(b). Furthermore, this dismissal with prejudice should be deemed a "strike" under the "three strike" rule of the PLRA, as set forth in 28 U.S.C. § 1915(g).



## RECOMMENDATION

Based upon the foregoing discussion, it is recommended as follows:

- **Defendants' Motion to Dismiss or for Summary Judgment [28-1] should be granted;**
- **Plaintiff's Motion for Summary Judgment [32-1] should be denied as moot;**
- **Plaintiff's Motion for Discovery [41-1] should be deemed moot;**
- **Plaintiff's Motion for Summary Judgment [43-1] should be denied as moot;**
- **Plaintiff's Motion for an Order of Judgment [45-1] should be denied as moot;**
- **Plaintiff's Motion for a Hearing [47-1] should be denied;**
  and

- This dismissal with prejudice should be deemed a "strike" under the "three strike" rule of the PLRA, as set forth in 28 U.S.C. § 1915(g).

January 9, 2006
Charleston, South Carolina

George C. Kosko
United States Magistrate Judge

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation" AND The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, <u>but not thereafter</u>, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation

precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. \*\*\* This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. \*\*\* We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. \*\*\* A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

> **Larry W. Propes, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**